Robert V. Prongay (SBN 270796)
   rprongay@glancylaw.com
Pavithra Rajesh (SBN 323055)
   prajesh@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff Fiyyaz Pirani and Proposed Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIYYAZ PIRANI, as TRUSTEE OF IMPERIUM IRREVOCABLE TRUST, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NETFLIX, INC., REED HASTINGS, TED SARANDOS, and SPENCER NEUMANN,<br><br>    Defendants. | Case No. 4:22-cv-02672-JST<br><br>**NOTICE OF MOTION AND MOTION OF FIYYAZ PIRANI FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    September 29, 2022<br>Time:    2:00 p.m.<br>Crtrm.:  6 – 2nd Floor<br><br>Judge:  Jon S. Tigar |
| CLEVELAND BAKERS AND TEAMSTERS PENSION FUND, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NETFLIX, INC., REED HASTINGS, THEODORE SARANDOS, SPENCER NEUMANN, and GREGORY PETERS,<br><br>    Defendants. | Case No. 4:22-cv-03164-JST |

**NOTICE OF MOTION AND MOTION**

**TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 29, 2022, at 2:00 p.m., or as soon thereafter as the matter can be heard in the courtroom of the Honorable Jon S. Tigar, in Courtroom 6, 2nd Floor, 1301 Clay Street, Oakland, CA 94612, Plaintiff Fiyyaz Pirani, Trustee of Imperium Irrevocable Trust ("Pirani") will move this Court for entry of an Order: (i) consolidating the above-captioned actions; (ii) appointing Pirani as Lead Plaintiff; (iii) approving Pirani's selection of Glancy Prongay & Murray LLP as Lead Counsel; and (iv) granting such other and further relief as the Court may deem just and proper.

This motion is brought pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and the Federal Rules of Civil Procedure. In support of this Motion, Pirani submits a Memorandum of Points and Authorities in support thereof and the Declaration of Robert V. Prongay and the exhibits attached thereto, and all of the prior pleadings and other files in this matter, and such other written or oral arguments as may be permitted by the Court.

This motion is made on the grounds that Pirani is the most adequate plaintiff, as defined by the PSLRA, based on his significant losses suffered as a result of the Defendants' wrongful conduct as alleged in the above-referenced actions. Further, Pirani satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, as his claims are typical of other class members' claims and he will fairly and adequately represent the interests of the class.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Fiyyaz Pirani, Trustee of Imperium Irrevocable Trust ("Pirani") respectfully submits this memorandum of law in support of his motion pursuant to the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq*. (the "PSLRA") for an Order: (1) consolidating the above-captioned actions; (2) appointing Pirani as Lead Plaintiff under 15 U.S.C. § 78u-4(a)(3)(B); (3) approving Pirani's selection of Glancy Prongay & Murray LLP ("GPM") as Lead Counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v); and (4) granting such other relief as the Court may deem to be just and proper (the "Motion").

## I.    PRELIMINARY STATEMENT

This is a class action on behalf of persons and entities that purchased or otherwise acquired Netflix, Inc. ("Netflix" or the "Company") common stock or call options, or sold put options, between October 19, 2021 and April 19, 2022, inclusive (the "Class Period").[1]

The PSLRA provides that the Court shall appoint the "most adequate plaintiff" as lead plaintiff—*i.e.*, the plaintiff most capable of adequately representing the interests of class members. The PSLRA also provides a presumption that the most adequate plaintiff is the person or group of persons with the largest financial interest in the relief sought by the class who otherwise satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure.

Pirani has "the largest financial interest in the relief sought by the class" as a result of Defendants' wrongful conduct as alleged in this action. In addition, for purposes of this motion, Pirani satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as his claims are typical of other class members' claims, and he is committed to fairly and adequately representing the interests of the class. Thus, pursuant to the PSLRA's lead plaintiff provision, Pirani respectfully submits that he is presumptively the most adequate plaintiff and should be appointed as lead plaintiff for the class.

---

[1] A subsequent complaint was filed with a longer but narrower Class definition. As discussed *infra*, the Court should not use this longer class period.

Additionally, Pirani's selection of GPM as lead counsel for the class should be approved because the firm has substantial expertise in securities class action litigation and the experience and resources to efficiently prosecute this action.

## II. FACTUAL BACKGROUND[2]

Netflix operates an entertainment platform that offers TV series, documentaries, feature films, and mobile games across a variety of genres and languages. It also offers a DVD-by-mail service in the U.S.

On October 19, 2021, Netflix explained that it was "seeing the positive effects of a stronger slate in the second half of the year" and noted that it "under-forecasted paid net adds for the quarter (4.4m actual vs. our 3.5m projection), while ending paid memberships of 214m was within 0.4% of our forecast." Netflix's Chief Financial Officer stated that "throughout the quarter . . . churn [was] at low levels," so the Company announced that "For Q4'21, we forecast paid net adds of 8.5m, consistent with Q4'20 paid net additions."

On January 20, 2022, after the market closed, Netflix admitted that it "slightly over-forecasted paid net adds in Q4," adding 8.3 million subscribers compared to the 8.5 million it earlier expected. The Company also stated that, despite "healthy" retention and engagement, it only expected to add 2.5 million net subscribers during first quarter 2022, below the 4.0 million net adds in the prior year period, citing slower acquisition growth due to, among other things, added competition. On this news, the Company's stock price fell $110.75, or 21.7%, to close at $397.50 per share on January 21, 2022, on unusually heavy trading volume.

On April 19, 2022, after the market closed, Netflix reported that it lost 200,000 subscribers during the first quarter of 2022, compared to prior guidance expecting the Company to add 2.5 million net subscribers. The Company attributed its slowing revenue growth to, among other things, instances of account sharing with an estimated 100 million additional households and competition with other streaming services. On this news, the Company's share price fell $122.42,

---

[2] This section is adapted from the complaint in the first-filed action.

or more than 35%, to close at $226.19 per share on April 20, 2022, on unusually heavy trading volume.

The first-filed complaint in this action alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements, and well as failed to disclose material adverse facts about the Company's business, operations, and prospects, including: (1) that Netflix was exhibiting slower acquisition growth due to, among other things, account sharing by customers and increased competition from other streaming services; (2) that the Company was experiencing difficulties retaining customers; (3) that, as a result of the foregoing, the Company was losing subscribers on a net basis; (4) that, as a result, the Company's financial results were being adversely affected; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's stock, Pirani and other class members have suffered significant losses and damages.

### III.  PROCEDURAL BACKGROUND

On May 3, 2022, Pirani commenced the first securities class action lawsuit against Netflix and certain of its officers, captioned *Pirani v. Netflix, Inc.*, No. 4:22-cv-02672-JST (the "*Pirani* Action"). The *Pirani* action is brought on behalf of persons and entities that purchased or otherwise acquired Netflix common stock or call options, or sold put options, during the Class Period (October 19, 2021 to April 19, 2022).

On May 31, 2022, Plaintiff Cleveland Bakers and Teamsters Pension Fund commenced a second lawsuit, captioned *Cleveland Bakers and Teamsters Pension Fund v. Netflix, Inc.*, No. 4:22-cv-03164-HSG (the "*Fund* Action," and together with the *Pirani* Action, the "Related Actions"). The *Fund* Action is brought on behalf of persons and entities that purchased or otherwise acquired Netflix *common stock* between January 19, 2021 and April 19, 2022, inclusive. Notably, the class definition in the *Fund* Action excludes options transactions.

## IV.     ARGUMENT

### A.     The Related Actions Should Be Consolidated

Consolidation of related cases is appropriate where the actions involve common questions of law and fact, and therefore, consolidation would avoid unnecessary cost, delay, and overlap in adjudication. *See* Fed. R. Civ. P. 42(a); *see also Mullen v. Wells Fargo & Co.*, No. 20-cv-07674, 2021 WL 965344, at *2 (N.D. Cal. Mar. 15, 2021) (consolidating actions "because the complaints involve common questions of fact and law").

Despite differences in the class definition, the Related Actions present similar factual and legal issues. For example, both actions allege the same corrective disclosures at the end of the Class Period. Both actions allege overlapping false and misleading statements during the Class Period. Both actions allege claims under the same statutes. And, except for Defendant Gregory Peters, both actions allege claims against the same defendants. As such, consolidation under Federal Rule of Civil Procedure 42(a) is appropriate.

### B.     Pirani Should Be Appointed Lead Plaintiff

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff"—*i.e.*, the plaintiff most capable of adequately representing the interests of the class—is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

The presumption in favor of appointing a plaintiff as lead plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff:

> (aa)    will not fairly and adequately protect the interest of the class; or

(bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(II).

As set forth below, Pirani has complied with all of the PSLRA's requirements and satisfies all of the PSLRA criteria to be appointed lead plaintiff. Pirani, to the best of his knowledge, has the largest financial interest in this litigation, satisfies the relevant requirements of Federal Rule of Civil Procedure 23 and is not aware of any unique defenses Defendants could raise against him that would render him inadequate to represent the class. Accordingly, Pirani submits that he should be appointed lead plaintiff. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff").

### 1. Pirani Filed The Initial Complaint And Made A Timely Motion

Pirani filed the initial complaint in this action. Moreover, Pirani has made a timely motion in response to the PSLRA early notice that he issued. On May 3, 2022, pursuant to Section 21D(a)(3)(A)(I) of the PSLRA, Pirani published notice in connection with this action. *See* Declaration of Robert V. Prongay ("Prongay Decl."), Ex. A. Therefore, Pirani had sixty days (*i.e.*, until July 5, 2022) to file a motion to be appointed as lead plaintiff. Pirani both filed a complaint and timely filed a motion for appointment as lead plaintiff within sixty days of the notice, in compliance with the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

Additionally, as set forth in his PSLRA certification, Pirani attests that he has reviewed the complaint, adopts the allegations therein, and is willing to serve as a representative of the class. *See* Dkt. No. 1 at 21-23 (Pirani's certification, filed with his complaint). Accordingly, Pirani satisfies the first requirement to serve as Lead Plaintiff for the class.

### 2. Pirani Has The Largest Financial Interest In The Relief Sought By The Class

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Gemstar-TV Guide Int'l. Sec. Litig.*, 209 F.R.D. 447, 450 (C.D. Cal. 2002). At the time of this filing, Pirani believes that he has the

1  largest financial interest among Plaintiff and class members who filed timely applications for
2  appointment as lead plaintiff and accordingly is presumed to be the "most adequate plaintiff."
3  Specifically, Pirani purchased Netflix common stock and call options, and sold Netflix put
4  options, during the Class Period when Netflix's stock price was artificially inflated by Defendants'
5  misstatements and omissions and, as a result, suffered a financial loss of $34,307,982.14. *See*
6  Prongay Decl., Ex. B.

7  Pirani believes that the class period in his complaint is the proper class period to assess
8  financial interest at this stage. Although the *Fund* Action asserts a longer[3] class period, that
9  complaint, as pled, lacks sufficient allegations to justify the expanded class period asserted therein.
10  *See generally Fund* Action, Dkt. No. 1, ¶¶20-25; *see e.g., Villare v. ABIOMED, Inc.*, 2020 WL
11  3497285 at *5 (S.D.N.Y. June 29, 2020) (declining to assess financial interest using expanded
12  period starting with statements of "record high revenue growth" because there were no allegations
13  that defendants already knew of declining revenue growth in next three fiscal quarters).[4] Even
14  though Pirani believes that the class period in his complaint is the appropriate one for evaluating
15  any competing movants' financial interest, Pirani will fully investigate the factual propriety of any
16  claims in the longer class period if he is appointed lead plaintiff.

17  To the best of his knowledge, Pirani is not aware of any other plaintiff or class member
18  that has filed a motion for appointment as lead plaintiff who is claiming a larger financial interest.[5]

---

[3] The *Fund* Action class definition is narrower because it excludes option transactions.

[4] Additionally, the class definition in the *Fund* Action may constitute improper gamesmanship. Pirani filed the first complaint in the Related Actions and attached his Netflix transactions, disclosing that he had more than $34 million in losses including millions of dollars' worth of options transactions. *See* Dkt. No. 1 at 21-23. As such, it is highly suspicious that the *Fund* Action excludes options transactions. *ABIOMED*, 2020 WL 3497285, at *5 (crediting gamesmanship to conclude that shorter class period is appropriate). Moreover, if a movant has a lesser loss than Pirani in the initial class period, but a larger loss in the *Fund* Action's class period, the Court should investigate the filing of the *Fund* Action to see if there was some coordination between counsel.

[5] Even under the class period and definition in the *Fund* Action's complaint, Pirani suffered losses of $18,912,073.27. *See* Prongay Decl., Ex. C.

As such, Pirani believes he has the "largest financial interest in the relief sought by the class," and thus satisfies the second PSLRA requirement to be appointed as lead plaintiff for the class.

### 3. Pirani Satisfies The Requirement Of Rule 23 Of The Federal Rules Of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See Cavanaugh*, 306 F.3d at 729-30. Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

In making its determination that putative lead plaintiffs satisfy the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *See Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018). At the lead plaintiff stage, "[t]he typicality and adequacy requirements of Rule 23 are the main focus" and "[e]xamination of the remaining requirements [of Rule 23] are deferred until the lead plaintiff moves for class certification." *Richardson v. TVIA*, No. 06-cv-06304, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) (citing *Cavanaugh*, 306 F.3d at 730); *In re Cendant*, 264 F.3d at 263 ("The initial inquiry . . . should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy.").

#### a) Pirani's Claims Are Typical

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that, "the claims . . . of the representative parties" be "typical of the claims . . . of the class." A proposed lead plaintiff's claims are typical if "other members have the same or similar injury . . . the action is based on conduct which is not unique to the named plaintiffs . . . and . . . other class members have been injured by the same course of conduct." *Hessefort*, 317 F. Supp. 3d at 1061.

Here, Pirani's claims are typical of the claims asserted by the proposed class. Like all members of the class, Pirani purchased Netflix common stock and call options and sold Netflix put options during the Class Period and suffered losses as a result of his transactions. Like all members of the class, Pirani alleges that Defendants violated federal securities laws by disseminating materially misleading statements concerning Netflix's operations and financial prospects. Pirani's losses, like the losses suffered by all other members of the class, arise from the artificial inflation of Netflix stock caused by Defendants' alleged misrepresentations and omissions. Accordingly, Pirani's interests and claims are typical of the interests and claims of the class.

### b) Pirani Is An Adequate Representative

A lead plaintiff movant is adequate so long as he and his counsel have no conflicts of interest with other class members and they will prosecute the action vigorously on behalf of the class. *See Hessefort*, 317 F. Supp. 3d at 1061.

Here, Pirani easily satisfies the adequacy requirements. Pirani's financial interest demonstrates that he has a sufficient incentive to ensure vigorous advocacy. Pirani has retained competent and experienced counsel with the resources and expertise to effectively prosecute this action. *See* Prongay Decl., Ex. E (the firm's résumé). Pirani attests to his ability and motivation to prosecute this action. *See* Prongay Decl. Ex. D. Demonstrating his ability to serve as lead plaintiff, Pirani is currently serving as lead plaintiff in two other investor class actions: *Pirani v. Slack Techs., Inc.*, No. 3:19-cv-05857 (N.D. Cal.), which is ongoing; and *In re 2U, Inc. Securities Class Action*, No. 8:19-cv-03455 (D. Md.), in which Pirani recently obtained preliminary approval of a $37 million settlement. He is a tech entrepreneur residing in Houston, Texas and has founded many successful companies. *Id.* at ¶2. He has been managing his own investment portfolio for at least ten years. *Id.* In addition, Pirani is not aware of any conflict between his claims and those asserted on behalf of the class. As such, Pirani satisfies the typicality and adequacy requirements of Rule 23.

### C. The Court Should Approve Lead Plaintiff's Choice Of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Bodri v. Gopro, Inc.*, No. 16-cv-00232, 2016 WL 1718217, at *5 (N.D. Cal. Apr. 28, 2016) ("Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class.") (quoting *Cavanaugh*, 306 F.3d at 739 n.11).

Here, Pirani has selected GPM as lead counsel for the class. As reflected by the firm's résumé, attached to the Prongay Decl. as Ex. E, the Court may be assured that, by granting Pirani's motion, the class will receive the highest caliber of legal representation. Accordingly, the Court should approve Pirani's selection of counsel.

### V. CONCLUSION

For the foregoing reasons, Fiyyaz Pirani, Trustee of Imperium Irrevocable Trust asks the Court to grant his motion and enter an Order: (i) consolidating the Related Actions; (ii) appointing Pirani as Lead Plaintiff; (iii) approving Pirani's selection of GPM as Lead Counsel; and (iv) granting such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| DATED: July 5, 2022 | Respectfully submitted, |
| | **GLANCY PRONGAY & MURRAY LLP** |
| | By: /s/ Robert V. Prongay |
| | Robert V. Prongay |
| | Pavithra Rajesh |
| | 1925 Century Park East, Suite 2100 |
| | Los Angeles, California 90067 |
| | Telephone: (310) 201-9150 |
| | Facsimile: (310) 201-9160 |
| | Email: info@glancylaw.com |
| | |
| | *Counsel for Plaintiff Fiyyaz Pirani and Proposed Lead Counsel for the Class* |
| | |
| | **THE LAW OFFICES OF FRANK R. CRUZ** |
| | Frank R. Cruz |
| | 1999 Avenue of the Stars, Suite 1100 |
| | Los Angeles, CA 90067 |
| | Telephone: (310) 914-5007 |
| | |
| | *Additional Counsel* |

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case and am over eighteen years old. On July 5, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 5, 2022, at Los Angeles, California.

*/s/ Robert V. Prongay*
Robert V. Prongay